UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Patricia Canning,

    Plaintiff,

v.                                                 Case No. 15-14390

FCA US LLC,                      Sean F. Cox
                                                    United States District Court Judge

    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case. Plaintiff has brought (1) retaliation claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et. seq.*, and the Elliott Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2101 *et. seq.*, and (2) hostile work environment claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et. seq.*, and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1101 *et. seq.* This matter is before the Court, following the close of discovery, on Defendant's motion for summary judgment. The parties have fully briefed the issues and the Court heard oral argument on October 26, 2017.

For the reasons below, the Court shall grant the motion in part and deny it in part. The Court concludes that Defendant is not entitled to summary judgment in its favor on Plaintiff's retaliation claims because, construing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact for trial. But the Court shall grant Defendant's motion as to Plaintiff's hostile work environment claims because she has failed to establish that she was

1

subject to unwelcome harassment based on her disability.

**BACKGROUND**

Plaintiff Patricia Canning began working at Defendant FCA US LLC in 1990. Def. Stmt. of Material Facts Not in Dispute, ¶ 1 (Doc. # 18). From February 2010 to October 2013, Plaintiff was the Terminal Manager in Defendant's Toledo, Ohio transport center, reporting to Martin DiFiore. *Id*. at ¶ 2. In October 2013, Plaintiff obtained a position as Defendant's Northern Borders Manager/FAST (Free and Secured Trade) coordinator. *Id*. at ¶ 4. Plaintiff started the position on a part-time basis and began working full-time later that fall. *Id*.

The dispute in this case arises from Defendant's annual performance evaluation process for certain management-level employees. This process, called Performance Leadership Management (PLM), evaluates employees based on their work performance and leadership skills. *Id*. at ¶ 6. Employees receive a PLM rating based on the following 9-box matrix:

| 7 | 8 | 9 |
|---|---|---|
| 4 | 5 | 6 |
| 1 | 2 | 3 |

The Y-axis evaluates performance and the X-axis evaluates leadership (for instance, a score of 3 reflects high leadership but low performance). Green box scores (6, 8, 9) are the highest possible scores, yellow box scores (3, 5, 7) are acceptable, orange box scores (2, 4) show that improvement is needed, and a red box score (1) is the lowest possible.[1] *Id*. An employee's PLM form also includes substantive comments regarding the employee's leadership skills and work

---

[1]Although the statement of undisputed facts refers to "2" and "4" ratings as orange box scores, witness testimony primarily refers to these ratings as "red" scores.

performance. *Id*.

Once a PLM form is prepared, calibration meetings occur where managers meet with their peers and fellow managers to review the PLMs. *Id*. at ¶ 7. An employee's PLM rating may be adjusted following calibration meetings. Schmidt Dep., 38. Defendant has informal guidelines for how many employees should be in each score category: about 15 percent in the red, 60 percent in the yellow, and 25 percent in the green. *Id*. at 20-22; DiFiore Dep., 38.

In October 2013, Plaintiff was responsible for preparing PLM forms for two of her subordinates, Joe Russo and Ritchie Burns. Def. Stmt., ¶ 8. Burns was 48 years old. *Id*. at ¶ 30. Plaintiff gave each employee a "5" rating. *Id*. These scores were then addressed at a calibration meeting attended by Plaintiff, terminal managers from Detroit, Windsor, and Toledo, DiFiore, and HR representative Stacey Simonson. *Id*.

At the meeting, Plaintiff advocated in favor of Burns' rating and brought documents to support her position. DiFiore Dep., 90; Pl. Dep., 215. Burns' score was discussed alongside that of another employee, Detroit supervisor Steve Daidone, who had also received a "5" rating. Pl. Dep.,110-11. Daidone was in his 60s. Def. Stmt., ¶ 30. There was a discussion about which of the two employees should be demoted to a "4" rating. Pl. Dep., 110-11. None of the materials Plaintiff brought were considered during this discussion. *Id*. at 215. After a consensus could not be reached, a blind vote was held to determine which employee would be rated a "4". *Id*. at 110-11. Following the vote, Burns received a "4" rating. *Id*. at 122. Those voting in favor had agreed that Daidone should not receive a "4" because Detroit already had two employees with that rating. *Id*. at 124. Plaintiff received little explanation for why Burns' score was reduced. *Id*.

Following the meeting, Plaintiff met with DiFiore and Simonson. *Id*. at 157. DiFiore and Simonson instructed Plaintiff to change Burns' rating, which she did. *Id*. at 86. Plaintiff did not substantively alter the comments on the PLM. *Id*. at 124.

Shortly thereafter, a second level calibration meeting occurred. DiFiore Dep., 112. At the time, Burn's PLM indicated a rating of "4" but the substantive comments did not reflect that rating. *Id*. at 112, 115. A couple days later, Plaintiff met with DiFiore and Simonson, who directed her to change her comments on the PLM to reflect the rating score. *Id*. at 115. Plaintiff subsequently added numerous substantive comments to Burns' PLM (which she asserts lack factual basis). Pl. Dep., 136-38. During this process, Plaintiff told DiFiore and Simonson that she believed that Burns' rating was influenced by age and that she was forced to change the rating because of that. *Id*. at 142, 146.

As a midlevel manager, Plaintiff was also subject to the PLM process. Plaintiff had received a "5" in 2010 and 2011 (meeting expectations in leadership and performance). *Id.* In 2012, because of Plaintiff's successful work in challenging the Union's position on pay practices, she received an "8" (meeting expectations leadership; high performance). *Id*.

In November 2013, Plaintiff was the subject of a calibration meeting discussing her PLM. Def. Stmt., ¶ 12. Following the meeting, Schmidt told Plaintiff that she was rated a "5" for 2013. Pl. Dep., 166-69. Schmidt testified that when she left the meeting, Plaintiff was a low "5" trending towards a "4". Schmidt Dep., 79.

On December 5, 2013, DiFiore, DiFiore's superior William Cook, Simonson, and Schmidt met to determine Plaintiff's final 2013 PLM rating. Def. Stmt., ¶ 16. Plaintiff received a low rating on leadership, resulting in a "4" rating. Def. Ex. J. The PLM also contained

4

substantive comments critiquing Plaintiff's communication skills, accountability, and leadership abilities. *Id*. 1. The PLM did not refer to complaints of age discrimination. *Id*.

On December, 10, 2013, Plaintiff left work on medical leave. Def. Stmt., ¶ 20. That same day, Cook sent an email to Simonson, Schmidt, and DiFiore, among others, to confirm that Plaintiff's rating was being moved to a low in leadership and a medium in results, which corresponds with her "4" rating. Pl. Ex. 20.

On September 2, 2014, Plaintiff returned from her medical leave and was assigned as a customs specialist reporting to Michele Wilton. Def. Stmt., ¶ 21. That same day, Plaintiff met with Schmidt, who expressed her concern that Plaintiff was returning for financial reasons rather than because she was ready to return to work. Schmidt Dep., 105. Schmidt also inquired as to whether Plaintiff was eating healthy and taking care of herself. Pl. Dep., 189.

Wilton regularly scheduled 30-day review meetings with employees that were new to her unit. Wilton Dep., 68-69. Upon her return from medical leave, Plaintiff received a calendar notice for a 30-day review. Pl. Dep., 179. Plaintiff never received a document stating that she would face discipline if certain performance objectives were not met. *Id*. at 179-80.

Plaintiff experienced difficulties as she transitioned into her new position. Early on, Wilton told her that "[w]e're going to take it easy on you." *Id*. at 191. Plaintiff did not receive business cards and her phone was not publicly listed. Schmidt. Dep., 113. Plaintiff also testified that she believed that her coworkers knew she had been on leave for mental health reasons and that she was mocked and excluded on that basis. Pl. Dep., 195-96.

On October 2, 2014, Plaintiff advised Defendant that she was taking another medical leave. Def. Stmt., ¶ 23. The next day, she filed a Request for Investigation with Defendant's

5

Diversity department, claiming that management had shared her medical information with others, that she had been forced to lower Burns' PLM score because of his age, and that she was retaliated against when she refused. *Id*. at ¶ 25. After investigating her complaint, the department concluded that Plaintiff's allegations were unsubstantiated.[2] Def. Ex. S.

On September 16, 2015, Plaintiff was awarded Social Security Disability Benefits retroactively to December 10, 2013. Def. Stmt., ¶ 28. Plaintiff remained on leave until February 2017, when she retired. *Id*. at ¶ 24. Plaintiff is receiving permanent disability retirement benefits from Defendant. *Id*. at ¶ 28.

On December 18, 2015, Plaintiff filed the instant action against Defendant (Doc. # 1). Following discovery, Defendant moved for summary judgment on all of Plaintiff's claims (Doc. # 18). Plaintiff has responded (Doc. # 22).

**STANDARD OF DECISION**

Summary judgment will be granted where no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S. Ct. 2505; 91 L.Ed.2d 202 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587; 106 S. Ct. 1348; 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The Court "must view the evidence, all facts, and any inferences that may be drawn from

---

[2]The investigation also noted that Schmidt "could benefit from coaching concerning questioning employees returning from medical leave. Def. Stmt., ¶ 25.

the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002). "The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). "This is so because the nonmovant, in response to a properly made and supported motion for summary judgment, cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." *Id.*

## ANALYSIS

### I. Retaliation Claim

Defendant moves for summary judgment on Plaintiff's ADEA and ELCRA claims that she was retaliated against for opposing Defendant's age discrimination, arguing that she has failed to establish a prima facie case. "The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) Defendant was aware that Plaintiff engaged in that activity; (3) Defendant took an adverse employment action against Plaintiff; and (4) there is a causal connection between the protected activity and the adverse action. *Id.* The "burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

The Court may "look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-retaliation clause." *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007). "ELCRA claims are analyzed under the same standards as federal

7

ADEA claims." *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).

### A. Whether Plaintiff Engaged in a Protected Activity

To establish a prima facie case of retaliation, Plaintiff must first show that she engaged in a protected activity. This requires Plaintiff to prove that she took an "overt stand against suspected illegal discriminatory action." *Blizzard*, 698 F.3d at 288. The operative question is whether Plaintiff "held an objectively reasonable and good faith belief" that the operative conduct was unlawful. *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016). "A person opposing an apparently discriminatory practice does not bear the entire risk that is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989). "[T]he issue of objective reasonableness should be decided as a matter of law only when no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015).

Viewing the facts in the light most favorable to Plaintiff, she has demonstrated that she opposed an employer's practice in good faith. Complaining to management and other employees about allegedly unlawful practices and opposing such practices is "opposing" conduct that is protected by the ADEA. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Here, Plaintiff opposed changing Burns' PLM and complained to DiFiore, her supervisor, that she believed she was being forced to alter the PLM because of Burns' age. And there is no indication that her opposition and complaints were not in good faith.

The next question is whether Plaintiff had an objectively reasonable belief that the

practice she opposed was unlawful. *Braun*, 828 F.3d at 512. Plaintiff points to varying surrounding circumstances as justifying her belief that Burns' PLM rating was the product of age discrimination.

Plaintiff refers to several age-related comments that were made by management, including general references to "emerging talent" and to whether employees "raise[d] the bar" and specific comments made about Burns that made fun of him for having a baby at a young age and referred to him as rigid and incapable of changing "after all this time." Pl. Dep., 131-32. Plaintiff also testified that Burns was not the first to receive a PLM rating that did not reflect his performance because of his age. Plaintiff's peers, other older employees, indicated that they felt that they had been discriminated against. Older employees also received ratings that, from Plaintiff's perspective, did not reflect their work performance. Finally, DiFiore also directed Plaintiff to include false comments in Burns' PLM. Plaintiff alleges that these substantive comments, added after Burns' rating was downgraded to a "4", were not based on Burns' actual performance.

Although Defendant repeatedly disputes the veracity of many of the above allegations, at this stage the record must be considered in the light most favorable to Plaintiff. And viewed in that light, the above facts are sufficient to allow Plaintiff to survive summary judgment. Plaintiff alleges that management initially selected older employees, Burns and Daidone, to receive a lower rating. Management also made several age-related comments, including disparaging comments specifically about Burns. These comments, the alleged discrimination experienced by other older employees, and DiFiore's directive to include false comments in Burns' PLM, could allow a reasonable jury to conclude that Plaintiff reasonably believed she was opposing

9

Defendant's practice of age discrimination in the PLM process.

Defendant contends that Plaintiff's belief was objectively unreasonable because she was aware of undercutting facts, namely that Daidone, an employee older than Burns, received a better rating. But evidence that Defendant was not systematically downgrading its older employees does not compel the conclusion that it did not downgrade Burns based on his age. And while Plaintiff has not specifically identified similarly situated younger employees that were treated differently than the older employees, *see Jackson v. Bd. of Ed. of Memphis City Schs. Of Memphis, Tenn*, 494 Fed. App'x. 539, 544 (6th Cir. 2012) (holding the plaintiff could not show a reasonable belief of racial animus or discriminatory intent where she failed to proffer any evidence that similarly situated white employees were treated differently), it is not Plaintiff's burden to prove that age discrimination actually occurred. *See Horner v. Klein*, 497 Fed. App'x. 484, 489-90 (2012) (holding the plaintiff engaged in a protected activity even though his underlying sexual harassment claim was without merit).

Plaintiff's burden to establish the elements of her prima facie case is not onerous. Here there are questions of material fact regarding whether Plaintiff engaged in a protected activity by opposing the perceived age discrimination in the PLM process. A reasonable jury could conclude that Plaintiff opposed an employer's practice with the good faith belief that it constituted age discrimination and that her belief was objectively reasonable.

### B. Whether Defendant was Aware that Plaintiff Engaged in the Activity

Next, Plaintiff must show Defendant was aware of her protected activity, which requires demonstrating that "the individuals charged with taking the adverse employment action knew of Plaintiff's complaint." *Braun*, 828 F.3d at 512 (quotations omitted). There is a genuine issue of

material fact as to this element. Plaintiff testified that she told DiFiore, her supervisor and the person responsible for preparing her PLM, that she believed Burns' rating was changed because of his age.

**C. Whether Defendant Took an Adverse Employment Action Against Plaintiff**

The third element of a prima facie case is whether Defendant took an adverse employment action against Plaintiff. Aside from one general assertion that Plaintiff's evidence fails on each element of her prima facie case, Defendant does not argue that Plaintiff has failed to establish this element and the Court will not make that argument for it. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). For the purposes of this motion, the Court deems that Defendant has conceded that it took an adverse employment action against Plaintiff. *See Mahoney v. Ernst & Young LLP*, 487 F.Supp.2d 780, 811 n. 164 (S.D. Tex. 2006).

**D. Whether there is a Causal Connection**

Finally, Plaintiff must show a causal connection between the protected activity and the adverse action, which requires Plaintiff to present sufficient evidence to support the inference that her protected activity was the likely reason for the adverse action. *In re Rodriguez*, 487 F.3d 1001, 1011 (6th Cir. 2007). Plaintiff need only put forth some credible evidence enabling the Court to deduce a causal connection. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). Here, the parties' briefing focuses on whether Plaintiff's PLM rating was causally related to her protected activity.

"Although no one factor is dispositive in establishing a causal connection, evidence that . . . the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Evidence of temporal proximity, "coupled with other indicia of retaliatory conduct," can establish a causal inference. *See Randolph v. Ohio Dep't. of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).

Viewing the record in the light most favorable to Plaintiff, Plaintiff has shown a causal connection between her protected activity and her low PLM rating. There is a strong temporal connection between the two. Plaintiff received her low PLM rating within a month of her complaint to DiFiore. *See Singfield v. Akron Metro. Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004) (temporal proximity of just over three months was sufficient). This connection is also supported by other indicia of discrimination. Plaintiff's PLM rating was an outlier. Prior to 2013, Plaintiff had never received lower than a "5" rating. Further, Plaintiff alleges that her PLM also included several false statements about her performance and opposition to the PLM process. Although Defendant vigorously defends these comments as justified, this defense concerns questions of fact, which the Court may not resolve at this stage.

Plaintiff's burden to establish a causal connection is not onerous. *Allen v. Dep't. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999). Viewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has created a genuine issue of material fact regarding whether there is a causal connection between Plaintiff's opposition to the alleged age discrimination and her receipt of a lower PLM rating.

### E. Pretext

Once a plaintiff has established a prima facie case of retaliation, the burden of production shifts to the defendant to offer a non-discriminatory reason for the adverse action. *Blizzard*, 698 F.3d at 288. If the defendant meets its burden, the plaintiff then has the burden to demonstrate

that the proffered reason was mere pretext. *Id*.

The Court need not address this portion of the analysis at length. Defendant's motion does not address pretext but only argues that Plaintiff failed to establish a prima facie case. Even assuming that Defendant's proffered justifications for Plaintiff's PLM rating constitute a non-discriminatory reason, Defendant did not argue in its motion for summary judgment that Plaintiff has failed to show that its justifications were pretextual. Again, the Court will not make Defendant's arguments for it. *McPherson*, 125 F.3d at 995-96. And Defendant's omission is not remedied by its cursory reference to pretext in its reply brief. *See Frank v. U.S. Food and Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich. 2014) ("Generally, new arguments or issues are waived when they are raised for the first time in a reply brief."). Therefore, because a reasonable jury could conclude that Plaintiff has established a prima facie case of retaliation, the Court concludes that Defendant is not entitled to summary judgment on Plaintiff's retaliation claims.

## II. Hostile Work Environment Claim

Defendant also moves for summary judgment on Plaintiff's hostile work environment claims. To maintain a hostile work environment action under the ADA, Plaintiff must show: (1) she was disabled; (2) she was subject to unwelcome harassment based on her disability; (3) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (4) Defendant knew or should have known about the harassment and failed to take corrective measures. *Trepka v. Bd. of Educ.*, 28 Fed. App'x 455, 461 (6th Cir. 2002); *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997). The PWDCRA substantially mirrors the ADA and resolution of a plaintiff's ADA claim will generally also resolve the PWDCRA claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012).

Plaintiff's claim is based on a number of different interactions and experiences from when she returned to work from leave. She points to comments that Schmidt made to her during a meeting on her first day back from work, actions by management that undermined her ability to do her job, and ostracism from her co-workers.

With respect to the second element of the prima facie case, the Court must distinguish "between harassment and *discriminatory* harassment." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (emphasis added). Plaintiff has failed to make out a prima facie case because the record is devoid of any indication that she was subject to unwelcome harassment *based on* her disability.

Plaintiff testified that Schmidt asked her why it took nine months for her to return, if she was eating healthy, and whether she was back for financial reasons.[3] Nothing in these statements suggests that Schmidt's comments were based in any way on Plaintiff's disability. Moreover, there is no evidence upon which a reasonable trier of fact could conclude that Schmidt was aware of Plaintiff's disability or that Plaintiff had been on mental health leave. Schmidt testified that she was under the impression that Plaintiff's leave was because of a thyroid issue, Schmidt Dep., 90, and Plaintiff testified that she never told Schmidt about her disability and that she did not know whether Schmidt knew about it. Pl. Dep., 203-04. And while Plaintiff does identify one email in which she mentioned to Schmidt that she had health issues "mixed in with some

---

[3] Plaintiff also relies on a number of statements attributed to Schmidt in her Request for Investigation. Pl. Ex. 27. This exhibit is an unsworn statement that the Court may not consider when ruling on Defendant's motion. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). Moreover, even if the Court were to consider the statements, Plaintiff's claim would still fail because the statements are devoid of any inference that they were made based on Plaintiff's disability.

14

disappointment and depression," Pl. Ex. 29, this one-off reference does not lead to the inference that Schmidt was aware that Plaintiff had a mental health *disability* or that her medical leave was related to that disability.

Similarly, there is no indication that any actions taken by management to undermine Plaintiff's ability to perform her job were related to her mental disability. Plaintiff contends that Defendant restricted what she learned and at what pace, closely monitored her daily tasks and whereabouts, and refused to publicly acknowledge that Plaintiff had the position. But the record is devoid of evidence supporting an inference that those responsible for this conduct had any knowledge of Plaintiff's disability, let alone acted based on that disability.

Finally, Plaintiff claims ostracism by her coworkers created a hostile work environment. But while Plaintiff testified that she believed that all of her coworkers knew that her leave had been for mental health reasons, Pl. Dep., 195-96, this belief was mere conjecture, which is insufficient to defeat summary judgment. *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) (conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment). Plaintiff identified nothing beyond her subjective perceptions of her coworkers actions to permit the inference that her coworkers were acting based on her disability. And, even if her coworkers had ostracized her because of her disability, that alone is insufficient evidence of severe harassment to allow a reasonable jury to find that Plaintiff was subjected to a hostile work environment. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 518 (6th Cir. 2009).

In sum, although Plaintiff recites "a litany of perceived slights and abuses," these alleged harassing acts are irrelevant to the hostile work environment analysis because Plaintiff has not shown that the alleged harassment was based on her disability. *Bowman*, 220 F.3d at 464.

15

Because Plaintiff has failed to identify such harassment, she has failed to establish a prima facie case and Defendant is entitled to summary judgment on her hostile work environment claims.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court GRANTS Defendant's motion as to Plaintiff's hostile work environment claims but DENIES Defendant's motion as to Plaintiff's retaliation claims. Accordingly, the retaliation claims shall proceed to trial.

IT IS SO ORDERED.

                                                   s/Sean F. Cox
                                                   Sean F. Cox
                                                 United States District Judge

Dated: October 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2017, by electronic and/or ordinary mail.

                                                 s/Jennifer McCoy
                                                 Case Manager